UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

────────────────────────────────

FRANK BROWN,

                                    Plaintiff,

            -v.-                                              9:08-CV-0009
                                                                (TJM/DRH)
THOMAS G. EAGEN, *et al.*,

                                    Defendants.

────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FRANK BROWN
97-A-2072
Plaintiff, *pro se*

HON. ANDREW M. CUOMO                RICHARD LOMBARDO, Esq.
New York State Attorney General     Assistant Attorney General
Attorney for Represented Defendants

THOMAS J. McAVOY
Senior United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I.      Introduction**

        Plaintiff Frank Brown commenced this action *pro se* pursuant to 42 U.S.C. § 1983

("Section 1983") alleging that Defendants violated his rights under the United States

Constitution.  Dkt. No. 1 (Comp.).  Plaintiff seeks substantial monetary relief.

        Reading Plaintiff's Complaint liberally, Plaintiff claims that Defendants conspired and

retaliated against him for filing grievances; denied him access to the courts by interfering

with his legal mail; were deliberately indifferent to his serious medical needs; failed to

protect him from known harm; subjected him to excessive force; conspired against Plaintiff;

and denied him due process, all in violation of his rights under the First, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution.

Presently before the Court is Defendants' Motion to Dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1) and (6).  Dkt. No. 50.  Plaintiff has responded in opposition to the Motion. Dkt. No. 65.  For the following reasons, Defendants' Motion to Dismiss  is granted.

## II.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007);[1] *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (recognizing that the Supreme Court "is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). The court must accept the material facts alleged in the complaint as true. *Cooper v. Pate,* 378 U.S. 546, 84 S. Ct. 1733 (1964) (per curiam)); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005). In determining whether a complaint states a cause of action, great liberality is afforded to pro se litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (citation omitted).

For purposes of a Rule 12(b)(6) motion, the "complaint" includes any written

---

[1]  The Supreme Court, in *Bell Atlantic Corp.*, rejected the standard of review previously applied - namely, that "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief" - and replaced the "no set of facts" language with the requirement that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Id*. at 1974.

instrument attached to the complaint and any statements or documents incorporated into it

by reference.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Gant v.*

*Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995)(citations omitted). "Even where a

document is not incorporated by reference, the court may nevertheless consider it where

the complaint 'relies heavily upon its terms and effect,' which renders the document

'integral' to the complaint."  *Chambers*, 282 F.3d at 153 (citation omitted). The Court may

also consider "matters of which judicial notice may be taken."  *Kowalyshyn v. Sobieski*,

3:07-CV-687, 2008 WL 1924973, at *1 (D. Conn. Apr. 30, 2008).

## III.    Facts

The facts are related as alleged by Plaintiff in his complaint.  Dkt. No. 1 (Comp.).

### A.    First Cause of Action

On November 4, 2004, Defendants Burge and Bellnier failed to protect Plaintiff when

they did "nothing to stop" Spanish inmates from contaminating Plaintiff's food tray "by

putting ketchup that was sealed and called LA-BINE-YA, which is sealed ketchup with blood

inside" and by "paying black porters with drugs and money to let them violate [Plaintiff's]

food trays with sperm and blood and chemicals."  Comp. at 11.  Plaintiff's mail was

constantly tampered with at Auburn Correctional Facility by the spanish inmates and, as a

result, his grievances and complaints, including a letter to the FBI which included a sample

of the ketchup, were never delivered.  Comp. at 11-12.  Plaintiff's mail was tampered with

"to prevent [Plaintiff] from contacting anyone [to] let them know that all the murders of [his]

whole family was done by spanish inmates at Great Meadow from Oct, 2006, until Nov,

2007."  Comp. at 12.  Defendants Burge and Bellnier are "responsible for massive

corruption at Auburn from 9/17/2004 until 3/8/2005, so they are responsible for all corrupt

acts committed" against Plaintiff.  Comp. at 13, 33.

3

### B.      Second Cause of Action

On December 29, 2004, spanish officers gave out Plaintiff's personal information to "their spanish people."  Comp. at 13.  The sharing of Plaintiff's personal information began in 1999 when he was at Southport, and since then "all spanish inmates have been able to get all information at will."  Comp. at 13.  John Burge, Glenn Goord, and Lucien J. LeClaire were made aware of all of these "criminal acts by many spanish inmates and officers" but did nothing to protect Plaintiff's federal rights.  Comp. at 13, 33-34.

### C.      Third Cause of Action

On January 1, 2005 Defendants Nurse Smith[2] and Sergeant Nipper retaliated against Plaintiff because of the many grievances Plaintiff had filed against "medical and officers." Comp. at 13-14.  Nurse Smith and Sergeant Nipper gave Plaintiff "an infected medical resource drink with feces and blood inside of it."  Comp. at 14.  Nurse Smith was very nervous when she came to Plaintiff's cell on that day "[b]ecause some one put her up to this ... [and it] was done in retaliation for the many grievances and complaints" that Plaintiff was writing.  Comp. at 14, 34.

### D.      Fourth Cause of Action

Nurse Smith and Sergeant Nipper gave Plaintiff an "infected medical resource drink with feces and blood inside of it."  Comp. at 14.  Defendants were deliberately indifferent to Plaintiff's serious medical needs and to his safety in violation of the Eighth Amendment. Comp. at 14, 35.

### E.      Fifth Cause of Action

On January 6, 2005, Defendant Burge was involved in a "massive conspiracy" with

---

[2] Nurse Smith has not been served and has not appeared in this action.

4

Southport Superintendent Michael McGinnis, who is **not a defendant** in this action, to keep Plaintiff "on mental health level one" and medicated so as to prevent Plaintiff from pursuing his legal actions in Federal Court and exposing the massive conspiracy.  Comp. at 15. Burge and McGinnis knew each other because they had previously worked together at Southport.  Comp. at 15.  Plaintiff was put on mental health level one and transferred to Auburn "to be silenced at all costs."  Comp. at 15.  Plaintiff has "no mental health problems or issues at all."  Comp. at 15.  Burge's actions violated Plaintiff's right to due process in violation of the Fourteenth Amendment.  Comp. at 35.

      **F.**    **Sixth Cause of Action**

On January 12, 2005, Defendants Robinson, Laux, Wright, LeClaire, Goord, Burge, Bellnier, Meyers, Nurse Smith, Officer Smith, and Sergeant Nipper violated Plaintiff's "constitutional rights to be free from infections."[3]  Comp. at 15.  Plaintiff was infected with the hepatitis A virus and then denied medical treatment.  Comp. at 16.  All of the staff prevented Plaintiff from being tested for hepatitis to prevent the ongoing conspiracy from being exposed.  Comp. at 16.  Plaintiff advised "all staff at Central Office" of this problem but they did nothing at all.  Comp. at 16.  Defendants were deliberately indifferent to Plaintiff's serious medical needs and to his safety in violation of the Eighth Amendment. Comp. at 36.

      **G.**    **Seventh Cause of Action**

On January 18, 2005, Defendants Eagan, Bellamy, and Burge denied Plaintiff "access to the open tank cells."  Comp. at 16.  All Defendants are to blame for this discrimination because they "all had the opportunity to correct this policy that discriminated

---

[3] Defendants Robinson and Correctional Officer Smith have not been served and have not appeared in this action.

against [Plaintiff]."  Comp. at 16.   Defendants' actions were retaliatory in violation of

Plaintiff's First Amendment rights.  Comp. at 37.

###    H.    Eighth Cause of Action

On January 23, 2005, Defendants Meyers and Toomey denied Plaintiff his right to

"medical help" by destroying a paper instructing Plaintiff not to eat any food in preparation

for a blood test.  Comp. at 17.  LeClaire, Goord, Eagen, and Bellamy "are all responsible

also because they did nothing and knew of all crimes being done to [Plaintiff] many times."

Comp. at 17.  Defendant Wright is also responsible because it was "his duty to stop crimes

against [Plaintiff] for massive infections."  Comp. at 17. Defendants were deliberately

indifferent to Plaintiff's serious medical needs and safety in violation of the Eighth

Amendment.  Comp. 38.

###    I.    Ninth Cause of Action

On January 26, 2006, Defendant Nurse Vega, who is spanish, destroyed the test

results from Plaintiff's stool sample to cover up the conspiracy by spanish inmates and

corrupt officers.  Comp. at 18. Defendant was deliberately indifferent to Plaintiff's serious

medical needs in violation of the Eighth Amendment.  Comp. at 38.

###    J.    Tenth Cause of Action

On January 27, 2005, in retaliation for Plaintiff's filing grievances, Defendant Rizzo

gave Plaintiff tuna fish with "sperm in it."  Comp. at 18-19.  Plaintiff wrote many grievances

against Defendant Rizzo.  Comp. at 19.  Defendant retaliated against Plaintiff in violation of

his First Amendment rights.  Comp. at 39.

###    K.    Eleventh Cause of Action

On January 30, 2005, Defendant Meyers denied Plaintiff access to the courts "by

destroying [Plaintiff's] free legal postage mail," including his Article 78 motions.  Comp. at

19-20.  Defendant Meyers also destroyed many of Plaintiff's grievances.  Comp. at 20.

Meyers is the officer "who almost always picks up the mail."  Comp. at 20.  Defendant

Meyers denied Plaintiff access to the Courts in violation of his First Amendment rights.

Comp. at 39.

  **L. Thirteenth Cause of Action**[4]

  On February 1, 2005, Defendants Rizzo, Correctional Officer Smith, Portney, Nurse

Smith, Sergeant Nipper, and D. Meyers infected Plaintiff with "a life time virus called

Hepatitis A" because Plaintiff filed many grievances against them and other correctional

staff.  Comp. at 21.  Defendants subjected Plaintiff to cruel and unusual punishment and

were deliberately indifferent to his serious medical needs in violation of the Eighth

Amendment.  Comp. at 40.

  **M. Fourteenth Cause of Action**

  On February 2, 2005, Plaintiff was infected with H. Pylori from the drinking water.

Comp. at 21.  Defendant Burge, "being the chief person at Auburn in 2004 and 2005 is

responsible for [Plaintiff's] well-being."  Comp. at 22.  Defendant Laux refused to have

Plaintiff's blood tested.  Comp. at 22.  Both Defendants Burge and Laux knew that Plaintiff

was "bleeding inside from the drinking water" but did nothing.  Comp. at 22.  Defendants

were deliberately indifferent to his serious medical needs in violation of the Eighth

Amendment.  Comp. at 40-41.

  **N. Fifteenth Cause of Action**

  On February 10, 2005, Defendants Eagen, Bellamy, and Burge denied Plaintiff the

right to petition the government without retaliation or reprisals "because the grievance

---

  [4] Plaintiff's Complaint does not include a Twelfth Cause of Action.  *See* Comp. at
39-40.

program is not fair and effective." Comp. at 22. Plaintiff has been "infected in every prison ... most likely by chemicals, sperm, blood by officers, sergeants, medical staff and spanish inmate agents. [He] has been given three (3) life time viruses of Hepatitis A, Herpes and H pyloria. Plus massive infections in [his] stomach, throat and head for only using the grievance programs." Comp. at 23. "The whole corrupt Great Meadow murdered [Plaintiff's] whole family for only using the grievance program." Comp. at 24. Plaintiff was denied due process under the Fourteenth Amendment. Comp. at 42.

### O.    Sixteenth Cause of Action

On February 23, 2005, Defendants Burge, Bellnier, Nurse Smith, Officer Smith, Portney, Rizzo, Putman, Toomey, LeClaire, Wright, Eagen, Bellany, Laux, Robinson, Vega, Nipper, Meyers, and Goord all conspired with each other to infect Plaintiff with chemicals and to retaliate against him. Comp. at 25. Goord, Wright, LeClaire, Eagen, and Bellamy were all from the Central Office and therefore "in a position to stop all crimes being committed against [Plaintiff] but did nothing." Comp. at 25. Plaintiff claims that no white prisoners would be treated like this, only black prisoners, because there is "class-based discriminatory animus behind this massive conspiracy." Comp. at 25. Plaintiff states that

> [t]his massive conspiracy is from prison to prison with massive criminal acts of food tampering, mail tampering, property destruction, assaults, conspiracy to murder, attempted murders, massive infections, retaliation and murders of [Plaintiff's] whole family also. This is the biggest conspiracy in the history of United States. Plus using mental health to help [them] cover-up massive federal crimes.

Comp. at 26. Plaintiff claims that Defendants conspired against him in violation of 42 U.S.C. § 1985(3).

### P.    Seventeenth and Eighteenth Causes of Action

On February 27, 2005, Defendants Portney and Correctional Officer Smith assaulted

8

Plaintiff "by putting the black strap on [him] at sick call because nurse Androsko told the officers" to get Plaintiff out of there.  Comp. at 27.  When Plaintiff returned to his cell, Plaintiff put his hands out of the food slot and "all officers which [he] didn't put on this lawsuit because [he] is extremely indigent ... pulled [Plaintiff's] hands and arms very hard trying to break them and [Plaintiff's] wrists also plus [his] back was in extreme pain."  Comp. at 27-28.  Plaintiff alleges that he was subjected to excessive force in violation of the Eighth Amendment.  Comp. at 44-46.

> ### Q.    Nineteenth Cause of Action

On February 28, 2005, Defendant Putnam told Plaintiff that he will remember Plaintiff till the day Plaintiff died and then threatened to give Plaintiff food and water infected with feces, urine, and sperm.  Comp. at 28-29.  Putnam's actions were in retaliation for Plaintiff filing grievances in violation of the First Amendment.  Comp. at 29, 47.

> ### R.    Twentieth Cause of Action

On February 28, 2005, Officer Toomey tampered with Plaintiff's food tray by pouring some sort of liquid all over everything.  Comp. at 29-30.  Toomey planned this with Defendant Putnam.  Comp. at 30.  Plaintiff alleges that Defendants actions were retaliatory in violation of the First Amendment. Comp. at 48-49.

> ### S.    Twenty-first Cause of Action

On March 1, 2005, Defendant Rizzo contaminated Plaintiff's water with chemicals "that put pain in [Plaintiff's] side."  Comp. at 30.  Many times Defendant Officer Smith put feces and sperm in Plaintiff's hot water.  Comp. at 31.

> ### T.    Twenty-second Cause of Action

Plaintiff was in the Auburn Special Housing Unit (SHU) from October 30, 2004 until March 7, 2005 under conditions that were an "atypical and significant hardship [and] a

9

deprivation of a liberty interest."  Comp. at 31.  During this period of SHU incarceration, he
was infected with two or maybe three "life time viruses."[5]  Comp. at 31. Plaintiff alleges that
he "was entitled to be free from all infections, crimes against [him] in SHU at Auburn."
Comp. at 50.  Plaintiff claims that he was deprived of due process.  Comp. at 50.

## IV.    Defendants' motion to dismiss

Defendants argue that Plaintiff's Complaint should be dismissed because: (1) the
Complaint fails to state a claim pursuant to 42 U.S.C. § 1983; (2) Defendants are entitled to
qualified immunity; and (3) the First, Second, Third and Fourth causes of action are barred
by the applicable statute of limitations.  Dkt. No. 50.

## V.    Discussion

### A.    Statute of limitations

The applicable statute of limitations for Section 1983 actions arising in New York
requires claims to be brought within three years. *Pinaud v. County of Suffolk*, 52 F.3d 1139,
1156 (2d Cir. 1995) (citing *Owens v. Okure*, 488 U.S. 235, 250-51, 109 S.Ct. 573, 582
(1989); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

Defendants assert that Plaintiff's action was filed with the Court on January 4, 2008,
and that therefore Plaintiff's first, second, third, and fourth causes of action should be
dismissed as time-barred. Dkt. No. 50-2, Memorandum of Law at 26.  However, because
Plaintiff is an inmate, his pleading is deemed "filed" when it is delivered to prison officials.
*Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993); *Pritchard v. Kelly*, 9:98-CV-0349, 2000 WL
33743378, at *2 n.2 (N.D.N.Y. Oct. 3, 2000) (Sharpe, M.J.).  The date the plaintiff signed

---

[5] Plaintiff was placed in SHU after he "stabbed spanish inmate Rodriguez on
October 30, 2005.  Comp. at 32.  Plaintiff says that he stabbed Rodriguez because
Defendants had failed to stop the "corruption and breaches of security" that Plaintiff had
been subjected to.  Comp. at 32.

the complaint is presumed to be the date the plaintiff gave the complaint to prison officials to be mailed. *Mingues v. Nelson*, 96-CV-5397, 2004 WL 324898, at *3 (S.D.N.Y. Feb. 20, 2004). In this case, Plaintiff signed his Complaint on December 25, 2007. Comp. at 52. Accordingly Plaintiff may not prevail on any claims asserted in his Complaint which occurred prior to December 25, 2004.

Plaintiff's first cause of action asserts allegations against Defendants Burge and Bellnier concerning wrongdoing that occurred on November 4, 2004, **but also alleges** that Burge and Bellnier were "responsible for massive corruption at Auburn from September 17, 2004 continuing **until March 8, 2005**. Comp. at 11-13. The alleged wrongdoing in Plaintiff's second, third, and fourth causes of action occurred, if at all, on December 29, 2004 and January 4, 2008. Accepting Plaintiff's allegations as true, the Court cannot conclude at this juncture that the allegations set forth in the first through fourth causes of action are time-barred.[6] Defendants' Motion to Dismiss portions of Plaintiff's Complaint as untimely is denied **without prejudice**.

### B.   Personal Involvement

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. The personal involvement of a defendant is a prerequisite for the assessment of damages in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to Section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 453 (1981); *Johnson v. Glick*, 481 F.2d 1028,

---

[6] The sufficiency of Plaintiff's allegations will be discussed below.

11

1033 (2d Cir. 1973). "Further, a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (citing *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (other citation omitted).  Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted).

A defendant is "personally involved" if he or she "directly participated in the infraction." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Also, a defendant in a supervisory capacity may be "personally involved" within the meaning of Section 1983 if the state actor (1) failed to remedy the wrong after learning of the violation through a report or appeal; (2) created or continued a custom or policy under which unconstitutional practices ensued; or (3) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

Plaintiff has named supervisory personnel as Defendants and attempts to hold them liable for alleged violations of his rights by Department of Corrections employees.  Plaintiff alleges, among other things, that Burge and Bellnier failed to stop "breaches of security" including spanish inmates from giving Plaintiff ketchup contaminated with blood (Comp. at 11-12); Burge, Goord, and LeClaire did nothing to stop "the spanish population" from tampering with Plaintiff's food and mail and disseminating Plaintiff's personal information (Comp. at 13); Burge was involved in a "massive conspiracy" to keep Plaintiff on mental health status and medicated (Comp. at 15); Wright, LeClaire, Goord, Burge, and Bellnier and "all staff at Central Office were made aware of all infections and did nothing at all" (Comp. at 15-16); LeClaire, Goord, Eagan, Bellamy, and Wright are responsible for Plaintiff's injuries because "they did nothing and knew of all crimes being done to [Plaintiff]"

12

and did not stop the crimes or the "massive infections" (Comp. at 17).  Plaintiff's vague

allegations that he let the supervisory Defendants and all Central Office staff know about

the conspiracy and crimes against him is insufficient to provide the type of notice that would

have required these Defendants to act.  Moreover, none of these Defendants can be held

personally liable merely because they were in a high position of authority.  *See Ayers v.

Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) ( "[P]laintiff's claim for monetary damages

against [the Commissioner] requires a showing of more than linkage in the prison chain of

command.").

The Court has reviewed the Complaint in its entirety and afforded it great liberality

but is unable to find any allegations to suggest that any of the supervisory Defendants -

Burge, Goord, LeClaire, Bellnier, Wright, Eagan, or Bellamy - were personally involved or

directly participated in any violation of Plaintiff's civil or constitutional rights. *See Johnson*,

481 F.2d at 1034 (when monetary damages are sought under Section 1983, the general

doctrine of respondeat superior does not suffice and a showing of personal responsibility is

required).  Defendants Burge, Goord, LeClaire, Bellnier, Wright, Eagan, and Bellamy are

**dismissed without prejudice**.[7]

### C.    Failure to State a Claim

A court may dismiss an *in forma pauperis* complaint if it determines that the

complaint is frivolous. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1833 (1989).

"An action is frivolous when either:  (1) the factual contentions are clearly baseless, such as

when allegations are the product of delusion or fantasy; or (2) the claim is based on an

---

[7] As discussed below, even if Plaintiff could sufficiently allege personal involvement by these Defendants, Plaintiff has failed to state any claim which would entitle him to relief under Section 1983.

indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir.1998) (internal quotations omitted) (citing *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990) (per curiam) (quoting *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833)).

A complaint is factually frivolous if the facts alleged are clearly baseless, a category that includes allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 32-33, 112 S.Ct. 1728, 1733 (1992) (citing *Neitzke*, 490 U.S. at 325-28, 109 S.Ct. at 1833). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton*, 504 U.S. at 33, 112 S.Ct. at 1733. A complaint is based on an "indisputably meritless" legal theory when either the claim lacks an arguable basis in law, *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir.1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir.1995). Although the Court must accept the truth of Plaintiff's allegations on a motion to dismiss, the federal *in forma pauperis* statute grants the Court "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual allegations are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833.

Moreover, the law in this Circuit clearly provides that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (other citations omitted)); *Pourzandvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.) (citation omitted).

14

### 1.    Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment which encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290-91 (1976) (citations and quotations omitted).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement - the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." *See Leach v. Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y.  2000) (Kahn, J.) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297-98, 111 S.Ct. 2321, 2323-24 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.).  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

Plaintiff alleges multiple violations of his Eighth Amendment rights.  Plaintiff claims that Defendants were deliberately indifferent to his health and safety because they purposely infected him with and then denied him treatment for three "life-time" viruses, served him contaminated food, and subjected him to excessive force.

15

a.    **Medical claims**

Generally, to prevail on a claim of inadequate medical care under the Eighth

Amendment, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious*

medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical

need.  *Estelle*, 429 U.S. at 104, 97 S.Ct. at 290-91.  Mere disagreement with prison officials

about what constitutes appropriate medical care does not state a cognizable claim under

the Eighth Amendment.  *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992).  Prison

officials have broad discretion in determining the nature and the character of medical

treatment afforded to inmates.  *Id*. (citations omitted).  An inmate does not have the right to

treatment of his choice.  *Id*. at 45 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.

1986); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988)).  "Further, a delay in treatment

does not violate the constitution unless it involves an act or failure to act that evinces 'a

conscious disregard of a substantial risk of serious harm.'"  *Thomas v. Nassau County*

*Correctional Center*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (citation omitted).  "The

Second Circuit has 'reserved such a classification for cases in which, for example, officials

deliberately delayed care as a form of punishment, ignored a life threatening and fast-

degenerating condition for three days, or delayed major surgery for over two years.'"

*Thomas*, 288 F. Supp. 2d at 339 (citing *Espinal v. Coughlin*, 98 Civ. 2579, 2002 WL 10450,

at *3 (S.D.N.Y. Jan. 3, 2002)).  Even if a prisoner is able to establish delay, in order to

establish deliberate indifference, he must also show that his condition became worse or

deteriorated as a result of the delay.  *Thomas*, 288 F. Supp. 2d at 339.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical

needs when they gave him a "medical resource drink" containing blood and feces (fourth

cause of action); intentionally infected him with Hepatitis A and then denied testing and

16

medical treatment for the disease (sixth and thirteenth causes of action); infected him with H. Pylori (fourteenth cause of action); and served Plaintiff water intentionally contaminated with chemicals (twenty-first cause of action).  Plaintiff also alleges that the supervisory Defendants allowed spanish inmates and corrupt correctional officers to contaminate his food tray with blood, semen, urine, and chemicals.  These allegations are so fantastic or incredible as to be factually frivolous.  Moreover, with respect to the sixth, thirteenth, and fourteenth causes of action, Plaintiff has failed to allege a tangible connection between the acts of any of the Defendants named in those causes of action and the injuries suffered by Plaintiff.  Accordingly, Plaintiff's fourth, sixth, thirteenth, fourteenth, and twenty-first causes of action are dismissed **without prejudice**.

Plaintiff also alleges that he was unable to have his blood tested on January 23, 2005 because Defendants Meyers and Toomey destroyed the paper instructing Plaintiff to fast before the test (eighth cause of action).  Finally, Plaintiff alleges that on January 26, 2005, Defendant Vega destroyed the results from Plaintiff's stool sample to cover up the conspiracy by spanish inmates and officers (ninth cause of action).  Plaintiff does not, however allege that any of these actions resulted in a delay in treatment which was life-threatening or that Plaintiff was ultimately denied medical treatment because of these acts. *See, e.g. Amaker v. Coombe*, No. 96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("delay in treatment does not automatically indicate a violation of a prisoner's Eighth Amendment rights, 'unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.'"). Moreover, Plaintiff's claims against Defendants Meyers, Toomey, and Vega when read in their entirety are, as all of Plaintiff's claims in this Complaint, factually frivolous.  Plaintiff

17

alleges that the actions of these Defendants were part of the massive conspiracy to deliberately infect Plaintiff with viruses and then deny him proof that he had such viruses or treatment for the viruses.  Plaintiff's eighth and ninth causes of action are also **dismissed without prejudice**.

      **b.**    **Food contamination**

In the context of Eighth Amendment protections, prisoners are to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (citation omitted); *see also Lunney v. Brureton,* No. 04 Civ. 2438, 2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2005). Consequently, "[d]epriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck,* No. 97-CV-253, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles v. Coughlin,* 725 F.2d at 15).  However, as with most of his medical claims, Plaintiff's allegations that his food was contaminated with blood (sealed in packaged ketchup); feces; urine; semen; and chemicals are so conclusory and fantastic as to rise to the level of factually frivolous.  Accordingly, these allegations are dismissed **without prejudice**.

      **c.**    **Excessive force**

While the Eighth Amendment protects a prisoner against the excessive use of force, it "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (other quotations omitted)).  A truly *de minimis* use of force will rarely suffice to state a constitutional claim. *Hudson*, 503 U.S. at 9-10, 112 S.Ct. at 1000 ("[Not] every malevolent

18

touch by a prison guard gives rise to a federal cause of action."); *Johnson*, 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

Plaintiff alleges that Defendants Portnoy and Correctional Officer Smith "put the black strap" on Plaintiff's hands when transporting him from sick call to his cell.  Comp. at 27. The restraining of Plaintiff's hands with a black strap on one occasion during transport from sick call to his cell is a *diminimis* use of force at best and does not allege conduct which is "repugnant to the conscience of mankind."  Plaintiff's excessive force claims against Portnoy and Correctional Officer Smith are **dismissed without prejudice**.[8]

Plaintiff also alleges that once back at his cell, he held his hands out through the food slot to have the black strap removed and "all officers which [Plaintiff] didn't name in this law suit started pulling his hands and arms really hard trying to break them and [his] wrists also."  Comp. at 27-28.  Since Plaintiff has not named any of the officers responsible for this incident, this claim is also dismissed **without prejudice.**

Defendants' Motion to Dismiss Plaintiff's excessive force claims is granted and those claims (seventeenth and eighteenth causes of action) are dismissed **without prejudice**.

**2.    Retaliation**

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under § 1983 lies.  *See*

---

[8] To the extent that Plaintiff claims to have suffered emotional and mental harm for the alleged use of force by Defendants Portnoy and Smith, Plaintiff fails to state a claim upon which relief may be granted. *See* 42 U.S.C. §1997e(e) (No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury).

*Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002)).

In order to survive a motion to dismiss a complaint, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing:

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

*Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

Plaintiff alleges that he was retaliated against for filing grievances and complaints (third, seventh, tenth, nineteenth, and twentieth causes of action).  Since the filing of prison grievances is a constitutionally protected activity, Plaintiff meets the first prong of the retaliation test.  *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *Franco,* 854 F.2d at 590.

Plaintiff has not proffered non-conclusory allegations showing a causal connection between any of the alleged retaliatory conduct with any of Plaintiff's grievances.  More importantly, the retaliatory conduct alleged - which includes intentionally infecting Plaintiff with viruses; contaminating his food with blood, urine, semen, and chemicals; and murdering his whole family - are so outrageous and unbelievable as be factually frivolous.

20

Plaintiff's retaliation claims are **dismissed without prejudice** in their entirety.

### 3.     Denial of access to the courts

Inmates have a First Amendment right to "petition the Government for a redress of grievances."  This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (citations omitted).  "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord,* 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).  As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.  *Lewis*, 518 U.S. at 353; *Renelique v. Duncan*, 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (Strom, J.) (same) (citing *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994)).

Plaintiff alleges that Defendant Meyers denied Plaintiff access to the courts by destroying Plaintiffs' free legal postage mail, including Plaintiff's Article 78 motions (eleventh cause of action).  Comp. at 19-20.  Plaintiff does not allege any actual injury as a result of Defendant's alleged conduct.  Plaintiff fails to state a claim for denial of access to the Courts, and therefore his eleventh cause of action is dismissed **without prejudice**. *See Lewis*, 518 U.S. at 351, 116 S.Ct. at 2180 (to state a constitutional claim for denial of access to the courts, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim");

*accord Morello v. James*, 810 F.2d 344, 347 (2d Cir.1987).

### 4.      Conspiracy claims under Sections 1983 and 1985

To survive a motion to dismiss, a conspiracy claim under § 42 U.S.C. 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Concepcion v. City of New York*, No. 05 Civ. 8501, 2008 WL 2020363, at *5 (affirming the continued viability of the *Ciambriello* standards when analyzing a conspiracy claim *vis a vis* a motion to dismiss).[9]  Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d  Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief).  Moreover, a Section 1983 conspiracy claim must not only allege a conspiracy, but also the "actual deprivation of constitutional rights."  *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citing *Malsh v. Austin,* 901 F. Supp. 757, 765 (S.D.N.Y. 1995).  "Thus, if a

---

[9] The *Concepcion* Court stated that "in accord with Supreme Court precedent as well as the overwhelming weight of authority in this Circuit, this Court applies the *Ciambrello* standard in evaluating the sufficiency of the conspiracy claim ... under the Rule 12(b)(6) standard. In this regard ... the Court notes that it does not construe the decision in *Ciambrello* as imposing a 'heightened pleading requirement[ ]' for civil rights conspiracy claims ... nor a requirement that plaintiff must plead 'specific facts' to support his claim....  Rather, it reads *Ciambrello* as informing this Court's understanding of the type of factual allegations that are minimally sufficient to state a 'plausible' conspiracy claim under § 1983."  *Concepcion*, 2008 WL 2020363, at * 5.

plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights."  *See id.*

Plaintiff alleges in conclusory fashion that all of the Defendants were involved in a massive conspiracy against Plaintiff.  Plaintiff does not assert any facts giving rise to a conspiracy, but instead makes vague and shocking statements about a massive conspiracy involving Defendants, spanish inmates, and corrupt officers.  Plaintiff has not alleged, except in conclusory fashion, that any meeting of the minds occurred between any of the Defendants.  The Complaint does not contain any allegations to support a "plausible" conspiracy claim involving any of the Defendants.  "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (citing *Bell Atlantic Corp.*, 127 S.Ct. at 1965).

Plaintiff also asserts conspiracy claims under 42 U.S.C. § 1985(3).  To state a claim under 42 U.S.C. 1985(3)  a plaintiff must allege:

> "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of the citizens of the United States.'" *Fox v. City of New York,* No. 03 Civ. 2268, 2004 WL 856299, at *9 (S.D.N.Y. Apr. 20, 2004) (quoting *Mian* [*v. Donaldson, Lufkin & Jenrette Sec. Corp.*]*,* 7 F.3d [1085,] 1087-88 [(2d Cir.1993)]).

*Mione v. McGrath*, 435 F. Supp. 2d 266, 271-72 (S.D.N.Y. 2006).  Under § 1985(3), the language requiring intent to deprive of equal protection of the laws "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Segreto v. Kirschner*, 977 F. Supp. 553, 565 (D. Conn. 1997) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798 (1971)).

However, "[a]s the Second Circuit has noted repeatedly, conspiracy claims are to be viewed with skepticism and must be supported by more than mere conclusory allegations." *Webb*, 340 F.3d at 110 ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (internal quotation marks omitted).  Plaintiff's conclusory allegations of a conspiracy against him fail to provide any factual basis to plausibly support a meeting of the minds between the Defendants or that Defendants entered into an agreement to violate Plaintiff's rights.

Finally, even if Plaintiff's allegations of conspiracy were found to be more than merely conclusory, Plaintiff's conspiracy claims are barred by the "intra-corporate conspiracy" doctrine, also sometimes referred to as the intraenterprise conspiracy doctrine. The "intra-corporate conspiracy" doctrine provides that a corporation or public entity "generally cannot conspire with its employees or agents as all are considered a single entity." *Everson v. New York City Transit Auth*., 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (citation omitted); *see also Orafan v. Goord*, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006) (holding that the conspiracy claim failed because the alleged co-conspirators were all DOCS officials and employees acting within the scope  of their employment) (internal citations and quotations omitted), vacated and remanded on other grounds by *Orafan v. Rashid*, 249 Fed. Appx. 217, 2007 WL 2875968 (2d Cir. 2007).  An exception exists if the individuals are motivated by personal interests, separate and apart from the entity. *Orafan*, 411 F. Supp. 2d at 165.  To allege facts plausibly suggesting that defendants were pursuing personal interests, more is required than merely alleging defendants were motivated by personal bias.  *See Peters v. City of New York,* 04-CV-9333, 2005 WL 387141, at *3 (S.D.N.Y. Feb.16, 2005) ("[P]ersonal bias is not the sort of individual interest that takes a defendant out of the intraenterprise

conspiracy doctrine") (internal quotation marks and citation omitted); *accord, Johnson v. City of New York,* 01-CV-1860, 2004 WL 502929, at *5 (E.D.N.Y. Jan. 12, 2004).

In this case, all of the Defendants were DOCS employees during the period set forth in the Complaint and all were acting within the scope of their employment.  Therefore, the intra-corporate conspiracy doctrine applies. Additionally, Plaintiff has not alleged facts to plausibly suggest that the exception to the intra-corporate conspiracy doctrine applies.

For all of the foregoing reasons, Plaintiff's conspiracy claims (the fifth and sixteenth causes of action) are **dismissed** in their entirety **without prejudice**.

### 5.    Due process

To state a claim for violation of procedural due process, Plaintiff must allege first that he had a protected liberty interest and, second, if he had such an interest, that he was deprived of that interest without being afforded due process of law. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *see generally Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963 (1974).

Plaintiff alleges that Defendant Burge violated Plaintiff right to due process because he was involved in "massive conspiracy" to keep Plaintiff on mental health status and medicated in order to silence Plaintiff (fifth cause of action).  Comp. at 15.  This claim is dismissed as conclusory and for failure to state any sort of claim for denial of due process.

Plaintiff also alleges that Defendants Eagen, Bellamy, and Burge denied Plaintiff due process by having in place a "grievance program [that is] not fair and effective." (fifteenth cause of action).  Comp. at 22-23.  Inmates do not have a constitutional right to have grievances processed or to ensure that grievances are processed properly. *See e.g. Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (prison grievance procedures do not confer any constitutionally protected right on an inmate).  A violation of the inmate grievance

25

procedures does **not** give rise to a claim under Section 1983. *Cancel v. Goord,* No. 00 Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). Thus, Plaintiff's claims regarding the unfairness of the grievance process are dismissed.

Finally, Plaintiff alleges that he was subjected to an "atypical and significant hardship" during his SHU incarceration at Auburn in violation of his due process rights (twenty-second cause of action). Comp. at 31. Plaintiff has not however alleged that he received insufficient process prior to being confined in SHU nor does he indicate what Defendants, if any, were personally involved in the alleged denial of due process. Plaintiff fails to allege a plausible claim for denial of due process.

### 6.   Qualified Immunity

Defendants raise the affirmative defense of qualified immunity. Dkt. No. 50-2, Memorandum of Law at 24-25. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982)).

In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001), modified by *Pearson v. Callahan*, --- U.S. ---, 129 S.Ct. 808 (2009) (holding that although "the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory"). If the plaintiff establishes that the violation of a constitutional right occurred, the court can examine "whether the right was clearly established ... in light of the specific context of the case, not

26

as a broad general proposition." *Saucier*, 533 U.S. 194 at 201, 121 S.Ct. 2151. "If no

constitutional right would have been violated were the allegations established, there is no

necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201, 121

S.Ct. at  2156.  Because Plaintiff has not sufficiently alleged that any of the Defendants

have violated his constitutional rights, "there is no necessity for further inquiries concerning

qualified immunity."

## VI.   Conclusion

Plaintiff's recounting of the facts is conclusory at best and wholly fantastic.  Plaintiff

claims that he is the target of a "massive conspiracy" to infect him with three "life-time"

viruses; contaminate his food; and destroy his mail.  Plaintiff claims that spanish inmates

have been putting "LA-BINE-YA" on Plaintiff's food tray, which he describes as "sealed

ketchup with blood inside."  Plaintiff also claims that spanish officers are giving out Plaintiff's

personal information; Plaintiff is being kept at "mental health level one" and medicated to

prevent him from litigating his actions in the courts; he has been deliberately infected with

Hepatitis A, H. pylori, and herpes; and his food has been contaminated with feces, sperm,

blood, urine, and chemicals.  Additionally, Plaintiff alleges that as part of this conspiracy, his

whole family has been murdered.  Plaintiff claims that "[t]his is the biggest conspiracy in the

history of the United States."  Comp. at 26.

Even reading Plaintiff's Complaint in the most generous manner, the Court finds

Plaintiff's allegations as a whole to be unbelievable.  Moreover, Plaintiff's history of mental

illness, as documented in the psychiatric evaluations attached as exhibits to Plaintiff's

Complaint (*see* Comp., Exhibits at 8-15), further supports a finding that his allegations are

the product of delusion.  The Court finds that the Complaint is factually frivolous under the

standards delineated in *Denton*, *Neitzke*, and *Livingston* (*see* Section V.C., *supra*) and

therefore dismisses the Complaint in its entirety.[10]

WHEREFORE, based on the findings above, it is hereby

ORDERED, that Defendants' Motion to Dismiss (Dkt. No. 50) is **GRANTED** and

Plaintiff's claims and all Defendants are **dismissed in their entirety without prejudice**;[11]

and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum-Decision and

Order upon the parties in accordance with the Local Rules.


Dated:   March 26, 2009

Thomas J. McAvoy
Senior, U.S. District Judge

---

[10]  Since the Complaint has been found to be factually frivolous, it "is exactly the sort of case that the PLRA now requires that a district court dismiss 'before docketing, if feasible' ... [since a]llowing these frivolous suits to proceed would subject the prospective defendants to the type of inconvenience and expense that concerned the Supreme Court in *Neitzke*...." *Jones v. City of New York*, Nos. Civ.A. 99-8281 and Civ.A. CV-00-370, 2000 WL 516889, at *3 (E.D.N.Y. Mar. 15, 2000). Moreover, because the problem with Plaintiff's complaint is substantive, such that a better pleading will not cure it, leave to re-plead is denied as futile. *See Cuocco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[11] While Defendants Correctional Officer Smith, W. Robinson, and Nurse Smith have not been served or appeared, because all of Plaintiff's claims have been dismissed in their entirety, this action is dismissed as to the unserved Defendants as well.